UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-CV-24437-MORENO/LOUIS

ANA GLORIA DIAZ,

      Plaintiff,

vs.

NANCY A. BERRYHILL, Acting Commissioner
of Social Security Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS**

**THIS MATTER** is before the Court on Plaintiff Ana Gloria Diaz's Motion for Summary Judgment (ECF No. 28) and Defendant Nancy A. Berryhill's, Acting Commissioner of the Social Security Administration, Motion for Summary Judgment (ECF No. 29). United States District Judge Federico A. Moreno has referred the cross motions to the undersigned for a Report and Recommendation (ECF No. 2). The undersigned has fully considered the motions and the record and is otherwise duly advised in the matter.

Because the undersigned concludes that the Administrative Law Judge's ("ALJ") credibility determinations are not supported by substantial evidence, the undersigned respectfully recommends that Plaintiff's Motion be **GRANTED in part** and Defendant's Motion be **DENIED**, and that the ALJ's decision be **REVERSED** and **REMANDED** with instructions to accord proper weight to Dr. Aguilera's opinions, and to reassess steps three through five of the Social Security Administration sequential evaluation process, as further explained below.

I. **PROCEDURAL BACKGROUND**

This case involves an application for social security disability benefits under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. On June 8, 2015, Plaintiff applied for social security disability benefits, alleging a disability beginning December 31, 2008 (R. 170). Plaintiff's application identifies her impairments as herpes, depression, anxiety, chest pain, colon pain, stomach pain, and constipation (R. 54). Plaintiff's application was initially denied on August 21, 2015, and again on reconsideration on October 19, 2015. Plaintiff sought a hearing, which was held on October 6, 2017 before ALJ Gracian Celaya (R. 31-53). During the hearing, Plaintiff was represented by counsel, and both Plaintiff and a Vocational Expert Testified.

On January 9, 2018, the ALJ issued a decision denying Plaintiff's application because she was not "disabled" within the meaning of the Act (R. 20). Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review on October 9, 2018 (R. 1-5), rendering the ALJ's decision as the "final decision." *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986); 42 U.S.C. § 405(g). Plaintiff now seeks judicial review of the ALJ's decision. Both Parties have moved for summary judgment.

II. **STANDARD OF REVIEW**

Judicial review of the ALJ's decision is limited to whether "it is supported by substantial evidence and based on the proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Lewis*, 125 F.3d at 1439) (internal quotation marks omitted); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)

(substantial evidence is "more than a mere scintilla, but less than preponderance") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1250 n.8 (11th Cir. 2004)). Even if the evidence preponderates against the ALJ's decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)).

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step, sequential evaluation process used to decide whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At the first two steps, the claimant must show that she is not currently engaged in substantial gainful activity and that she has a severe impairment. *See id.* §§ 404.1520(a)(4)(i) and (ii), 416.920(a)(4)(i) and (ii). Neither point is contested here: it is undisputed that Plaintiff is not engaging in substantial gainful activity and the ALJ determined that Plaintiff has a combination of impairments that are "severe." Third, the claimant has an opportunity to show that the impairment meets or equals the criteria in one of the

Listings of Impairments ("the Listings"). *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a Listing and meets the duration requirement (20 C.F.R. § 404.1509), the claimant is disabled. *Id.* If it does not, the ALJ proceeds to the fourth step. At the fourth step, the ALJ considers the claimant's residual function capacity and the claimant's relevant past work to determine if she has an impairment that prevents her from performing her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant cannot perform her past work, the burden shifts to the Commissioner to show that there are jobs that the claimant can perform. *See Jones*, 190 F.3d at 1228; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE RECORD

#### A. Hearing Testimony

##### i. Plaintiff's Testimony

Plaintiff, who was 53 years old at the time of the hearing, lived in an apartment with her mother who rents it (R. 39). She has two adult children, a son that lives in the same city as her and a daughter who lives in a different country. Although she is married she has been separated from her husband since 2015. She only attended high school until the 10th grade (R. 41).

Plaintiff testified that the last job she remembered having was in 2007 and she was fired for "making a whole bunch of mistakes" (R. 42). However, Plaintiff then testified that she actually worked in 2009 at a different company as a receptionist (R. 42). She additionally testified that she cannot finish tasks assigned to her, that she is anxious, and panics (R. 43). She continued by stating that she is often sad and wants to be left alone. She also testified to being very claustrophobic (R. 45).

Plaintiff testified that she received treatment from a therapist on a monthly basis for the

past two or more years (R. 43). She testified that she was prescribed three different medications for her depression, anxiety and insomnia.

Plaintiff testified that a typical day for her consisted of her mother waking her up, having a little bit of breakfast, then she watches a little tv, and tries to pick up around the house (R. 48). She testified that she tries to help her mom with the cleaning but that her mother does most of the cooking (R. 48). She additionally testified that she helps bathe and dress her mother.

### ii. Vocational Expert Testimony

Daniel Myers, a Vocational Expert, also testified at the hearing (R. 49-52). The Vocational Expert categorized Plaintiff's past work as a receptionist as "light[,] semiskilled" work pursuant to the Dictionary of Occupational Titles (R. 50). In the first hypothetical, the ALJ asked Mr. Myers whether someone with Plaintiff's age, education, and certain mental limitations; specifically, a profession that was limited to performing simple, routine, repetitive tasks, limited to making simple work-related decisions and is limited to occasionally interacting with coworkers, supervisors and the public, could perform any of Plaintiff's past work (R. 51). Mr. Myers responded that such a person could not perform any of Plaintiff's past work (R. 51). The ALJ then asked if such a person could perform any work in the national economy. To which Mr. Myers responded such an individual could perform the work functions of a washer and laundry laborer (R. 51). For hypothetical two, the ALJ asked whether the same jobs would be available to an individual whose ability to follow work rules, use judgment, function independently and maintain concentration is seriously limited, but not precluded and this individual's ability to understand, remember and carry out simple job instructions is seriously limited, but not precluded (R. 51-52). Mr. Myers responded there would be no jobs in the national economy for such an individual (R. 52).

Plaintiff's lawyer did not examine the Vocational Expert but noted that the ALJ had used the form completed by the treating psychiatrist (R. 52).

### B. Summary of Relevant Medical Evidence

#### i. Dr. Maribel Aguilera:

Psychiatrist, Maribel Aguilera, M.D., was Plaintiff's primary treating physician from July 2014 until July 2017 at a frequency of six to seven times per year. She did not testify live at the hearing and the following is derived from her treating notes. When initially seen in July of 2014, Dr. Aguilera noted that Plaintiff was depressed with insomnia and high anxiety, from this meeting on Dr. Aguilera diagnosed Plaintiff with major depressive disorder (R. 314). At the next meeting in August of 2014, Dr. Aguilera noted minimal improvement, limited insight and judgment, fair hygiene, high energy, high mood stability, high motivation, and high participation (R. 313). However, by December of 2014, Dr. Aguilera noted minimal improvement, low mood stability, low motivation, low participation, low concentration, limited insight and judgment, and a Global Assessment of Functioning ("GAF") score of 50 (which is indicative of serious symptoms).

Over the course of Dr. Aguilera's 22 sessions with Plaintiff, she noted limited insight and judgement, broad affect, appetite at 70%, fair hygiene, increased depression, increased anxiety, fair eye contact, decreased concentration, decreased energy, decreased mood stability, decreased motivation, and decreased participation in 50% or more of the visits (R. 304-15, 327-28, 334-42). Additionally, Dr. Aguilera gave Plaintiff a GAF score of 50 in 18 of 22 treatment sessions (R. 304, 309-15, 327-28, 334-42).

Dr. Aguilera prescribed Paroxetine, which is typically used to treat depression, panic attacks, obsessive-compulsive disorder, anxiety disorders, and post-traumatic stress disorder and Temazepam, which is typically used to treat insomnia. After Plaintiff's third visit, Dr. Aguilera

increased the dosage of Paroxetine from 20 milligrams to 40 milligrams (R. 311-12). In 2016, Dr. Aguilera also prescribed Clonazepam, which is typically used to treat seizures, panic disorder, and anxiety.

### ii. Dr. Hector Meruelo, M.D.:

In August of 2015, Plaintiff was examined by Hector Meruelo, M.D. Although Dr. Meruelo noted that "no psychotic features were observed," he additionally noted that "patient was crying copiously throughout most of [the] interview" (R. 317). Dr. Meruelo noted that Plaintiff looked "clean adequately dressed but somewhat disheveled appeared [sic]." (R. 319). Additionally, Dr. Meruelo noted that Plaintiff was "fully oriented to time, person, and place, and in touch with reality but crying practically constantly throughout entire interview, appears to be depressed" (R. 319). Dr. Meruelo's diagnostic impression was that Plaintiff had a psychiatric problem with "chronic anxiety, depression" but stated he deferred to the opinion of Plaintiff's psychiatric doctor, Dr. Aguilera (R. 320).

### iii. State Agency Psychological Consultants

The record also contains three mental assessments completed by two non-examining State agency psychological consultants, James Levasseur, Ph.D., Linette Castillo, Psy.D., and a State agency general practitioner, Adrianna Gioia, M.D. (R. 54-66, 70-82). None of the three State agency consultants ever met with or evaluated Plaintiff in person.

Dr. Levasseur opined that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation (R. 61). He opined that Plaintiff was moderately limited in her abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended

7

periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in work setting (R. 63-65).

Dr. Castillo, in connection with a second State agency psychological evaluation of Plaintiff's file, shoaffirmed the opinion of Dr. Levasseur (R. 78-80). Dr. Gioia likewise determined, based on Plaintiff's file that Plaintiff was not disabled. The undersigned notes that the only evidence available to these consulting physicians as it pertained to Plaintiff's mental health history was Dr. Aguilera's treatment notes.

### C. The ALJ's Decision

After reviewing the evidence and conducting the five-step inquiry, the ALJ determined that Plaintiff was not disabled, and therefore, denied her application for benefits (R. 20). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 18, 2015, the application date (R. 12). At step two, the ALJ found that Plaintiff had the following combination of severe impairments: major depressive disorder and generalized anxiety disorder (R. 12). At step three, however, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 12). Specifically, the ALJ found that Plaintiff did not meet Listings 12.04 and 12.06, nor did Plaintiff meet an extreme limitation in one, or a marked limitation in two of the mental functioning criteria listed in paragraph B additionally considering paragraph C and finding that Plaintiff did not meet the paragraph C criteria. At step four, the ALJ concluded that despite Plaintiff's severe impairments, Plaintiff retained the residual functional capacity ("RFC") to

perform a full range of work at all exertional levels with certain non-exertional limitations (R. 15-18). Specifically, the ALJ determined that Plaintiff was limited to performing simple, routine repetitive tasks; making simple work-related decisions; and occasionally interacting appropriately with co-workers, supervisors, and the public (R. 15).

With respect to Plaintiff's testimony, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record (R. 15-16).

In reaching these conclusions, the ALJ considered the evidence in the record, including Plaintiff's testimony and the medical records. With respect to the medical evidence, the ALJ afforded Dr. Aguilera's opinion little weight because Dr. Aguilera "periodically opined in treatment notes that claimant was unable to work," and "findings of disability are reserved for the Commissioner." (R. 18). Additionally, the ALJ noted "the opinions are more limited than warranted and not supported by the symptomology and the consistent findings reflected in her treatment notes, including determination." (R. 18). The ALJ further stated that "Dr. Aguilera's satisfaction with the claimant's progress and response to treatment is also significantly demonstrated by her only changing claimant's medication on two occasions over the course of three years of treatment." (R. 18).

The ALJ afforded the State agency consulting physicians, Drs. Levasseur, Castillo, and Gioia great weight because of their Program knowledge and because "their opinions are also generally consistent with the totality of the evidence, including treating psychiatrist Dr. Maribel Aguilera, M.D.'s assignment of a moderate GAF rating of 50." (R. 17). Finally, the ALJ noted that while the record contains GAF scores, the Commissioner has declined to endorse the GAF scale,

9

and that "while some weight was given to these scores, the undersigned must rely on evidence that demonstrates the claimant's overall ability to function." (R. 18). Accordingly, the ALJ concluded that Plaintiff's allegations of disability were "unsupported and contradicted by findings in [the] treatments notes [and] simply do not evidence disabling symptoms and limitations." (R. 18).

Having determined that Plaintiff could perform work within a specified residual functional capacity, the ALJ proceeded to step five. At step five, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 19). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act (R. 20).

## IV.    DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision to deny her benefits was deficient. First, Plaintiff argues that the ALJ improperly assessed the medical evidence by affording little weight to Plaintiff's treating psychiatrist while affording great weight to the State agency consultative examiners. Second, Plaintiff avers that the ALJ failed to properly assess the Plaintiff's RFC because her RFC was not based on the substantial evidence of the record. Third, Plaintiff argues that the ALJ failed to properly assess Plaintiff's alleged symptoms and limitations.

Defendant avers that the ALJ properly considered the medical opinions in the record, that substantial evidence supports the ALJ's RFC finding, and that substantial evidence supports the ALJ's findings regarding Plaintiff's subjective complaints.

Upon review of the record, the undersigned finds that the ALJ's decision to accord Dr. Aguilera little weight and to give the State consultative examiners great weight was not supported by substantial evidence. The ALJ failed to properly assess the Plaintiff's RFC and her alleged

10

symptoms and limitations. Accordingly, the undersigned recommends that the ALJ's decision be reversed and that the case by remanded with instructions to the Commissioner to accord proper weight to the objective medical evidence and to reassess steps three through five of the Social Security Administration sequential process, as explained below.

### A. The ALJ Erred in Failing to Afford Proper Weight to Dr. Aguilera

In seeking reversal of the ALJ's decision, Plaintiff argues that the ALJ failed to accord proper weight to Plaintiff's treating physician, Dr. Aguilera. Specifically, Plaintiff avers that good cause did not exist to give Dr. Aguilera's findings "little weight" (R. 18). Defendant argues that substantial evidence supports the ALJ's opinion.

This Court's review of the Commissioner's decision is limited to determining if it is supported by substantial evidence and based upon proper legal standards. *Lewis*, 125 F.3d at 1439. It is well established that the "testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Id.* at 1440. "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotations omitted).

The reports of treating physicians are considered particularly valuable when treatment has extended over a considerable period of time. *Chester v. Bowen*, 792 F.2d 129, 130 (11th Cir. 1986). By contrast, "the opinions of reviewing, non-examining physicians, when contrary to those of examining physicians are entitled to little weight." *Ortega v. Chater*, 933 F. Supp. 1071, 1074 (S.D. Fla. 1996); *accord Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986) ("this court has previously cautioned against rejecting the opinions of treating physicians in favor of the contrary

conclusions of consultants who have merely examined an applicant's medical records.").

Here, although the ALJ acknowledged that Dr. Aguilera had been Plaintiff's primary treating psychiatrist for several years, he determined that her opinion should be afforded "little weight" because "findings of disability are reserved for the Commissioner . . . [and] the opinions are more limited than warranted and not supported by the symptomology and the consistent findings reflected in her treatment notes, including a determination of moderate severity." (R. 18). The ALJ also acknowledged that Dr. Aguilera completed two medical source statements which stated that Plaintiff was "seriously limited but not precluded" in her abilities to understand, remember, and carry out simple, detailed or complex job instructions; follow work rules and deal with stress; use judgment; maintain attention/concentration; interact with supervisors, coworkers, and the public; and make personal/social adjustments (R. 18 citing R. 332-33, 344-45). This was the same criteria the ALJ posed to the Vocational Expert to which the Vocational Expert said there were no jobs in the national economy (R. 52). However, the ALJ attempted to dismiss these findings by the treating psychiatrist on two grounds: First, Plaintiff's progress and response to treatment was significantly demonstrated by Dr. Aguilera only changing Plaintiff's medication on two occasions over the course of three years (R. 18). Second, the ALJ characterized Dr. Aguilera's findings as "generally benign" (R. 17) and claimed they were "more limited than warranted" and "not supported by the symptomology and the consistent findings reflected in her treatment notes, including a determination of moderate severity" (R.18). At the same time, he afforded "great weight" to the opinions of the reviewing physicians, Drs. Lavasseur and Castillo.

### i. The *Phillips* Factors

The undersigned turns to the *Phillips* factors to determine whether the rationale advanced by the ALJ constitutes "good cause" for giving little weight to Dr. Aguilera's findings. *Phillips*,

357 F.3d at 1240.

### a. First Factor

The first factor is whether the treating physician's opinion was not bolstered by the evidence. The ALJ stated that Dr. Aguilera's opinions are "more limited than warranted" and "not supported by the symptomology and the consistent findings reflected in her treatment notes, including a determination of moderate severity."[1] (R. 18). However, this is not accurate. Dr. Aguilera's notes contain multiple ways in which she analyzed and characterized Plaintiff's mental condition. While her reports may not indicate any specific laboratory or clinical tests, Dr. Aguilera set forth medical signs and symptoms sufficient to justify her diagnoses and treatment of Plaintiff. Included among the sings and symptoms suffered by Plaintiff are: anxiety (R. 342), depression (R. 342), psychomotor agitation (R. 342), fair hygiene (R. 342), low energy (R. 342), low mood stability (R. 342), low motivation (R. 342), low concentration (R. 342), limited insight and judgment (R. 342), minimal improvement (R. 342), and a GAF of 50 (R. 342).

Certain medical symptoms, when analyzed by a physician or psychologist, can point out identifiable elements of a specific impairment. Indeed, as with many psychiatric and psychological impairments, often medical signs and symptoms are the only means available to prove the existence and severity of these impairments. *Ortega*, 933 F. Supp. at 1075.

The Social Security Regulations definition of "objective medical evidence" includes medical "signs," which, in the context of a psychiatric observation, means "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception," that can be shown by observable facts that can be medically described and evaluated. 20 C.F.R. § 404.1502. In the

---

[1] The ALJ's assertion that Dr. Aguilera determined Plaintiff's condition was only moderately severe is based on an apparent misunderstanding of the GAF scores as further discussed below.

present case, Plaintiff's depression and anxiety, combined with her limited insight and judgment, low concentration, low mood stability, and low motivation were the medical signs analyzed to determine the existence and severity of her psychological impairments. In fact, in almost every medical record and at almost every medical appointment, Dr. Aguilera noted signs of Plaintiff's pronounced psychological impairments with minimal improvement in Plaintiff's condition. The vast majority of Dr. Aguilera's records document abnormalities in Plaintiff's behavior, mood, thought, and perception over almost a three-year time period. The ALJ failed to acknowledge the abundant documentation of Plaintiff's depression and anxiety symptoms as being "objective" evidence to support Dr. Aguilera's opinion, and thus, failed to give her opinions the appropriate weight. *See Thompson v. Barnhart*, 493 F. Supp. 2d 1206 (S.D. Ala. 2007) (reversing and remanding case for reconsideration where, in relevant part, the ALJ improperly declined to assign determinative weight to treating physician's opinion on the grounds that no objective clinical examinations confirmed physician's opinion).

### b. Second Factor

The second *Phillips* factor is whether the treating physician's opinions were contradicted by the evidence in the record. The ALJ points to two specific facts to give lesser weight to Dr. Aguilera's opinion. First, he points to the fact that Dr. Aguilera only changed Plaintiff's medication on two occasions over the three-year period of treatment. However, by making this determination that the Plaintiff's condition must not have been severe, despite Dr. Aguilera's opinion that it was, the ALJ is supplanting his own opinion for that of the treating physician's. *Marbury v. Sullivan*, 957 F.2d 837, 841 (11th Cir. 1992). Here, the ALJ is making a determination as to the severity based on the fact that the treating physician did not change or amend Plaintiff's medication. The ALJ is not in a better position to know what medications will or will not affect Plaintiff, nor did

any other medical expert in this case opine as to the proper or improper medications which should or should not have been given to Plaintiff to treat her psychological disorder. The ALJ's reliance on this fact, in face of all of Dr. Aguilera's other opinions does not constitute good cause or amount to a contradiction in the evidence. Here, the ALJ supplants her own judgment for that of the treating physician, Dr. Aguilera. *See Marbury*, 957 F.2d at 841 (A hearing officer may not substitute his own hunch or intuition for the diagnoses of a medical professional). Essentially, the ALJ disregarded the objective medical evidence reported by Dr. Aguilera and formed his own opinion based on Plaintiff's treatment.

The second fact that the ALJ points to as a contradiction is Dr. Aguilera's finding that Plaintiff's condition was "moderate" based on the GAF score of 50. The ALJ referred to Dr. Aguilera's GAF scores six times and described Dr. Aguilera's assessment of Plaintiff as "a determination of moderate severity." (R. 18). Plaintiff claims that a GAF score of 50 is not indicative of a "moderate" condition, rather it denotes a "severe" condition. Defendant did not address this issue in her brief.

The Court has independently checked the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, which denotes a GAF score of 51-60 as moderate symptoms or moderate difficulty in social, occupational, or school functioning; while a GAF score of 50 or below indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious difficulty in social, occupational, or school functioning (e.g. no friends, unable to keep a job). *Am. Psychiatry Ass'n Diagnostic and Statistical Manual of Mental Disorders*, 32-35 (4th ed. 2000) ("DSM-IV-TR"). Therefore, the ALJ's description of, and reliance on, Dr. Aguilera's characterization of the severity of Plaintiff's condition based on her GAF assessment is not only not supported by substantial evidence in the record, it is incorrect.

The only other evidence in the record that could have been relied on are: the opinions of the State agency evaluators, the opinion of Consultative Examiner Dr. Meruelo, and Plaintiff's hearing testimony. The Court finds that it was error to give "great weight" to the consulting physicians in light of giving "little weight" to that of the treating physician. *See Ortega*, 933 F. Supp. at 1074.

Here, the State agency consultative physicians did nothing more than review the medical records of Dr. Aguilera. While the ALJ states that he affords their opinions great weight because of their "program knowledge," this is not sufficient to supplant their opinions for that of Dr. Aguilera's. The ALJ stated that "the opinions are generally consistent with the totality of the evidence, including treating psychiatrist, Dr. Maribel Aguilera" (R. 17). However, while they found that Plaintiff was limited to simple, routine, repetitive tasks; limited to making simple work related decisions; and is limited to occasionally interacting coworkers, supervisors and the public, Dr. Aguilera came to the opposite conclusion, finding: Plaintiff's ability to relate to coworkers, supervisors, and the public was severely limited, but not precluded; ability to follow work rules, use judgment, function independently, and maintain concentration is seriously limited, but not precluded; and Plaintiff's ability to understand, remember, and carry out simple job instructions was seriously limited, but not precluded. *Ortega*, 933 F. Supp. at 1074 (the opinions of reviewing, non-examining physicians, when contrary to those of examining physicians, are entitled to little weight.). The ALJ gave great weight to the opinions of contrary, non-examining physicians, instead of affording them little weight.

Next, the ALJ claims that his affording great weight to the State agency examiners was consistent with that of Dr. Hector J. Meruelo's findings that Plaintiff was "in touch with reality and demonstrated no psychotic features." (R. 17-18). However, Dr. Meruelo's findings were not

16

inconsistent with Dr. Aguilera's; indeed, they were not substantially different from that of Dr. Aguilera's. Dr. Meruelo's psychiatric evaluation concludes with a notation that he in fact deferred to Dr. Aguilera, stating "[t]his appears to be basically a psychiatric problem; chronic anxiety, depression, *but I refer you to Dr. Maribel Aguilera* and before her to Dr. Pittack at the Citrus Mental Health Network.² *I defer to their opinion*." (R. 320) (emphasis added). The ALJ's giving little weight to Dr. Aguilera is then inconsistent with the substantial evidence because Dr. Meruelo, a medical doctor, deferred to Dr. Aguilera's opinion. Therefore, the ALJ's reliance on Dr. Meruelo as a basis to not afford weight to Dr. Aguilera is inconsistent with the Record and not supported by substantial evidence.

Further, with regards to contradictory evidence, the ALJ states that "despite the conditions [depression and anxiety], [Plaintiff] was able to maintain a marital relationship for at least 10 years and raise two children." (R. 17). "In addition, by her own report, the claimant takes care of and cooks for her 83-year old mother. She also testified that therapy had helped." (R. 17). However, the ALJ failed to acknowledge that Plaintiff testified that her mother sometimes wakes her up, and does most of the cooking (R. 47, 48). The Plaintiff never testified to her marital status, but the record indicates that her and her spouse have been separated since February of 2015, which the ALJ failed to acknowledge (R. 170-71).

    c. **Third Factor**

The third *Phillips* factor is whether the doctor's opinion was conclusory or inconsistent with the doctor's own medical record. Here, the ALJ does not indicate that he discredits Dr. Aguilera because her opinions are conclusory or inconsistent, however, the undersigned finds that they are not. Dr. Aguilera's notes spanned a period of three years and her opinions were in fact

---

² No records for Dr. Pittack were included in the transcript nor were they relied on by the ALJ.

17

consistent with her findings. Her notes describe the myriads of challenges Plaintiff faced as it related to her depression and anxiety. While the finding of disability is ultimately reserved to the Commissioner, Dr. Aguilera's comments regarding Plaintiff's disability and her ability, or lack thereof, to find gainful employment must be contextualized in the record as a whole. The medical record demonstrates that Dr. Aguilera believed Plaintiff's dysfunctionality resulted in her inability to work and would likely prevent her from obtaining, and keeping, a job in the future. Accordingly, Dr. Aguilera's statements, especially in light of their consistency throughout a three-year period, "are not the kind of conclusory standard recognized as non-persuasive" in the Eleventh Circuit. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

For the reasons set forth above, substantial evidence and good cause does not support the ALJ's decision to accord Dr. Aguilera's opinion "little weight," especially since she has been Plaintiff's sole psychiatrist for three years, saw her on 22 occasions, and confirmed the existence and severity of Plaintiff's impairments. Because Dr. Aguilera's opinion was bolstered by the medical evidence and consistent with the doctor's own medical records, there was no good cause to accord Dr. Aguilera's opinion less than substantial weight. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (holding that good cause did not exist to discount the opinions of physicians where the record as a whole did not "conclusively counter" the doctors' opinions).

## V.  CONCLUSION

Because the undersigned finds that the ALJ's decision to accord Dr. Aguilera little weight and to give the State consultative examiners great weight was not supported by substantial evidence, the ALJ failed to properly assess the Plaintiff's RFC and her alleged symptoms and limitations, the undersigned respectfully recommends that Plaintiff's Motion be **GRANTED in part** and Defendant's Motion be **DENIED**, and that the ALJ's decision be **REVERSED** and

**REMANDED** with instructions to reassess Plaintiff's and Dr. Aguilera's credibility, and to reanalyze steps three through five of the Social Security Administration sequential inquiry.[3]

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE** and **ORDERED** in chambers at Miami, Florida this 27th day of February 2020.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE

---

[3] Because the undersigned recommends that the ALJ reassess steps three through five of the Social Security Administration sequential inquiry, the undersigned need not address Plaintiff's final two arguments regarding Plaintiff's residual functional capacity and alleged signs and symptoms.